[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action to dissolve the marriage of the parties on the ground of irretrievable breakdown. Each party was represented by legal counsel. The parties presented testimony and exhibits on January 28, January 29, February 25, and February 26, 2003. The parties presented a written stipulation as to a parenting plan.
The more credible evidence leads to the following factual findings. The plaintiff, whose maiden name was Brenda Tyson, and the defendant married July 23, 1984, at Hartford, Connecticut. They have resided in the State of Connecticut continuously for more than one year next before the date of the complaint. There are three minor children issue of the marriage, to wit: Rochelle Royce Snider, born August 29, 1986; Belinda Shea Snider, born November 28, 1988; and Cassidy Leigh Snider, born April 12, 1993. The parties' fourth child, born January 22, 1984, died after only seven hours of life. No other minor children have been born to the wife since the date of the marriage. Neither party nor the children have received financial support during the marriage from the State of Connecticut or any municipality thereof. The marriage of the parties has broken down irretrievably.
The plaintiff wife is forty-one years old and attended college for three and one-half years. She did not get a degree. Except for short maternity leaves and a one-year hiatus when Belinda was very young, the plaintiff has worked outside the home throughout the marriage. First, she worked for Kew Photo Lab, then US Surgical. She was a licensed day care provider when the children were very young. Later, she worked for Pitney Bowes, earning $23,000 per year. When the parties moved to Milford, Connecticut in 1991, the plaintiff left Pitney Bowes. In part because of the special educational needs of the parties' second daughter, Belinda, the plaintiff gravitated to the teaching field. She started as a kindergarten teacher in a private school at a salary of $18,000. Then she worked at the local high school as an assistant special education teacher. She worked at Boys Village as a supervisor of a residential CT Page 3420 program at a salary of $26,000 to $27,000 until November 2000. At Bridgeport Trails thereafter, she was a teacher's aide in a high risk school. When that program lost its funding, the plaintiff lost her job. She collected unemployment compensation in the amount of $279 net per week from August 2002, until her current job started January 13, 2003. She is now the PATH Coordinator for the Bridgeport Health Department. The $40,000 salary is her highest rate of employment earnings in her career. Her job entails going into Bridgeport public schools and delivering self-esteem programs to children. The job is year-round. It carries health insurance benefits, at a reasonable cost, for the employee and dependents.
The plaintiff has accumulated no retirement or tax-deferred assets in her name. She currently meets with her pastor about three times a week in counseling to deal with the stresses of her life. She is in good health.
The defendant husband is forty-seven years old and attended college for three years. He did not get a degree. When he left college in 1980, the defendant started working at Stew Leonard's supermarket in Norwalk, Connecticut. He advanced through positions in the meat department from packager, to cutter, to assistant manager, to meat manager, to meat and seafood manager. In 1993, he became one of four or five store managers in the Norwalk store. A store manager is responsible for the day-to-day functional running of the store such as making sure the product is out and properly displayed. During his shift, the manager runs nine or ten store departments and oversees several hundred employees. The immediate supervisor of the store manager is a general manager. The general manager, in turn, answers to the president, Stew Leonard, Jr.
The defendant transferred to the Stew Leonard's supermarket in Danbury as of January 2002. The store is larger in square footage, but the defendant's duties as a store manager are essentially the same as they were in Norwalk. He works fifty-six hours per week. The defendant's base salary is $66,200 per year. In addition, he has earned in each recent year a bonus of about $4,500. The defendant has health benefits available for himself and his dependents at reasonable cost. As part of his employment at Stew Leonard's, the defendant gives motivational speeches and seminars locally. He also appears with groups of employees in television and radio promotional spots. Stew Leonard's is planning to open a new store on Long Island in May 2004. The defendant has tentatively been offered a position there as a store manager. He expects to accept the position.
Until recently, the defendant put aside moneys from his paycheck for 401(k) contributions. As of January 8, 2003, the net 401(k) savings CT Page 3421 account balance was approximately $3,600 because of an outstanding loan balance of $6,100. The 401(k) retirement account balance is approximately $22,100.
The defendant enjoys singing. In 1998, he made a compact disk and worked to promote its sales. The C.D. did not take off.
The defendant worked in the kitchen at home for two years developing a hot and spicy barbecue sauce. In October 2001, he borrowed $4,000 to incorporate a business — Absolutely Necessary, LLC — and to have the sauce produced. The defendant expended a great deal of time and effort in 2001 and 2002, promoting the sauce to food retailers. He has just a couple of cases left from the one hundred cases that were produced. He estimates his total sales receipts at $1,300. Most of the sauce was given away for promotional purposes. He does not intend to produce more sauce at this time. The company has no assets. The defendant enjoys good health.
Both parties have warm and loving relationships with their three daughters. Rochelle is sixteen; Belinda is fourteen; and Cassidy is nine. Belinda has learning disabilities. She is mainstreamed, but gets special time and attention in the classroom. She maintains average grades. She is particularly good at athletic pursuits. Rochelle and Cassidy do very well in school. The children are all in good physical and mental health. Given the educational attainments of the parents and their encouragement of the girls' studies, it is likely that some or all of the children will pursue post-majority education.
The parties have presented an assortment of difficulties as the causes for their arguments. The plaintiff has failed to substantiate her claims that the defendant had extramarital affairs and was a problem drinker. The court finds that making ends meet was at the root of the breakdown of this marriage. Only two years into the marriage, the defendant declared bankruptcy. The parties were able to buy the marital residence at 155 Carmen Road, Milford (the house) in 1989, only because Stew Leonard, Sr. personally loaned $36,100 to the defendant and co-signed the $136,500 mortgage. That transaction sounded the death knell for this marriage. The cost of the house has proven to be an anchor around the necks of these parties. Fourteen years later, the balance owed on the loan from Stew Leonard is $27,700 plus interest at a rate of 10.5 percent. The periodic payment on that loan is withdrawn directly from the defendant's paycheck. The parties refinanced the house in 1998 for $202,500. They used $11,000 to apply vinyl or aluminum siding to the house and the balance of the loan proceeds for debt consolidation payments. They refinanced again in 2000, for $222,100, when they needed a new roof and had more debt to CT Page 3422 discharge. In the past year, the parties have borrowed more than $11,000 from the defendant's 401(k) savings account to make mortgage payments. The balance now due on the 401(k) loan is $6,100. The repayment of that loan comes directly out of the defendant's paycheck along with the repayment on the Stew Leonard loan. The defendant also has a credit union loan with a current principal balance of $4,500 coming directly out of his paycheck. Together, these three loans take $204 in after-tax money out of the defendant's paycheck each week. At the time of trial, the mortgage was again two months in arrears approximately $4,300.
The current market value of the house is $280,000 to $300,000. The monthly mortgage payment is $2,113.80. That monthly payment does not include real estate taxes, home owners insurance or sewer use charges. The interest rate is over ten percent. In addition to the mortgage arrearage, the parties owe more than $17,100 in delinquent real estate taxes to the Town of Milford. Further interest on the delinquent taxes is accruing at a rate of over $200 per month. Judgment liens of $6,877.31 for the plaintiff's delinquent student loans and $385 for an accountant's services have been filed against the house on the Milford land records.
The plaintiff owes $10,000 on the 1997 Chrysler Town Country automobile driven by the defendant; the payment rate is $372 per month. She now makes the car insurance payments on both of the parties' cars at a cost of $164 per car per month. Each party now owes a few thousands of dollars in credit card debt and each owes several thousands of dollars to their attorneys in this action. The parties have no assets except the house, which is barely in the black, and the defendant's remaining 401(k) plan.
For the first years of the marriage, both parties caused their paychecks to be deposited directly into a joint checking account. The plaintiff paid all the bills from that account from 1984 to 1996. In 1996, the defendant stopped the direct deposit of his paycheck, but continued to be responsible for paying the mortgage and continued to contribute to food and other family needs. The parties have not spent lavishly on themselves or on entertainment or vices. They are both hard working. The defendant's entrepreneurial efforts in recent years have not succeeded. The defendant has borrowed money from friends, co-workers and members of the plaintiff's family in recent years in order to meet cash flow problems. The plaintiff has received gifts of clothing, furniture and cash from her family to keep the household afloat. The parties have had a combined gross income close to $100,000 in recent years, but the weight of the house has relentlessly dragged these parties into heavy debt. CT Page 3423
The plaintiff's most urgent request from the court is that she be awarded the house with a requirement that the defendant bring the taxes and mortgage current. That plan is completely unrealistic. Even if the defendant had the wherewithal to pay a lump sum of $21,400 today, the plaintiff has failed to show a realistic plan for refinancing the mortgage or keeping the taxes and mortgage current in the future.
The court has considered all the criteria of General Statutes §§46b-56, 46b-56c, 46b-62, 46b-81, 46b-82 and 46b-84 in light of the evidence presented. The following are the orders of the court:
1. The marriage of the parties is dissolved and they are each declared to be single and unmarried.
2. The parties shall have joint legal custody of the minor children. Primary residence shall be with the plaintiff.
3. The defendant shall enjoy reasonable, flexible and liberal rights of visitation with the minor children, but at a minimum:
A. Every other weekend from Friday afternoon to Sunday afternoon
B. Two weeks in the summer. Notice from the defendant to the plaintiff of the dates for the two weeks (or more, if desired) by June 1 of each year
C. One-half of the February and April school recesses
D. July 4, Christmas Eve and New Year's Eve in odd-numbered years
E. Memorial Day, Thanksgiving Day and Christmas Day in even-numbered years
F. Father's Day. The plaintiff shall always be entitled to Mother's Day.
G. President's Day, Martin Luther King Day and Labor Day to be alternated year by year between the parties by their mutual agreement as to who gets the next date
H. Sharing of the day by the parties for the following special occasions: New Year's Day, Good Friday, Columbus Day, Veterans Day, the day after Thanksgiving and December 26
4. The defendant shall pay child support in the amount of $306 per CT Page 3424 week. This amount is consistent with the child support guidelines of the State of Connecticut when the defendant's likely annual bonus is taken into account. Payment shall be by wage withholding.
5. This court shall retain jurisdiction regarding post-majority educational support. A motion or petition for an educational support order may be filed by either party at a subsequent date in accordance with General Statutes § 46b-56c.
6. So long as the obligation to pay child support continues, including but not limited to the possibility of post-majority educational support, each party shall provide to the other a copy of his or her federal income tax return for the immediate previous tax year, together with all schedules and attachments, on or before May 1 each year beginning May 1, 2004.
7. So long as the obligation to pay child support continues, including but not limited to the possibility of post-majority educational support, each party shall maintain the children on medical, dental and hospitalization insurance coverage available to him and her through their places of employment. The provisions of General Statutes § 46b-84 (e) shall apply.
8. Each party shall be responsible for his or her own health care and insurance.
9. Unreimbursed medical, dental, optical, orthodontia, hospitalization, psychological and prescriptive medication costs for the minor children shall be borne forty percent by the defendant and sixty percent by the plaintiff.
10. The defendant shall pay to the plaintiff forty percent of daycare expense reasonably incurred by the plaintiff in order to enable her to work full-time. At this time the proper amount is $13 per week. The childcare contribution shall not be paid by wage withholding, but shall be paid directly to the plaintiff by the defendant immediately upon the defendant's receipt from the plaintiff of written billing statements from the childcare provider. The defendant shall not be obliged to pay any childcare amount for services of a relative of the plaintiff
11. The plaintiff shall forthwith name the defendant, as trustee for the children equally, as the sole beneficiary on her life insurance benefit available to her at reasonable cost from her current or any future employer until each child has completed four years of college or attained the age of twenty-three, whichever shall occur sooner. CT Page 3425
12. The defendant shall forthwith name the plaintiff, as trustee for the children equally, as the sole beneficiary on his life insurance benefit available to him at reasonable cost from his current or any future employer until each child has completed four years of college or attained the age of twenty-three, whichever shall occur sooner.
13. The defendant shall pay spousal support to the plaintiff in the amount of $25 per week until the closing on the sale of the house at 155 Carmen Road, Milford. Upon the sale of the house, he shall pay alimony in the amount of $95 per week. Payment of alimony shall cease upon the death of either party, cohabitation of the plaintiff as defined by General Statutes § 46b-86 (b) or December 31, 2012, whichever event shall occur soonest.
14. Sole title to the house at 155 Carmen Road, Milford, Connecticut is awarded to the defendant, together with all the major appliances. Sole title to the house is hereby conveyed to the defendant. He shall file a certified copy of the divorce judgment, or relevant parts thereof, on the Milford land records at his own expense, attaching to the judgment the legal description of the house. The defendant shall market the house for sale and sell it as soon as possible. The defendant shall present to the plaintiff on or before April 2, 2003, the names, addresses and telephone numbers of three possible real estate agencies and three possible attorneys to represent the defendant in the real estate transaction. The plaintiff shall select one of the real estate agencies and one of the attorneys on or before April 9, 2003. If she should fail to make selections and convey the information on the selections to the defendant so that he receives the information by April 9, then the defendant alone shall make the selections and shall sign a listing agreement forthwith. The defendant shall be bound as to the list price for the house by the best judgment of the real estate agent, but shall inform the agent that the primary goal is a quick sale. The real estate agent shall be allowed to place a lock box on the door of the house. The plaintiff shall not interfere in any way with access to the house by real estate agents seeking to show the house to prospective purchasers. Until the sale of the house, the plaintiff is solely responsible for payment of the homeowners insurance up to the date of closing and all utilities at the house. The plaintiff shall vacate the house together with all of her possessions no later than twenty-four hours before the date and time fixed for closing on the house.
15. At the closing of the sale of the house, the proceeds shall be apportioned and paid directly by the closing attorney and in the following order of priority: CT Page 3426
 A. Real estate taxes and sewer use charges
B. Conveyance taxes and fees of the real estate agent and closing attorney
 C. First mortgage
D. Adjustments and credits to the buyer, as may be required by contract
 E. Judgment liens
F. The court does not consider it likely that either party will be making mortgage payments from now until the sale of the house. If either party should make such a payment between March 11 and the date of sale, then that party shall receive full reimbursement for that payment at this level in the order of priorities.
G. Any refund on prepaid homeowners insurance shall be payable to the plaintiff alone since she is solely responsible for all homeowners insurance payments up to the date of sale.
H. The defendant's credit union loan through his employer
I. The outstanding loan balance on the 1997 Chrysler Town Country automobile
J. $10,000 towards paydown of the principal now owing on the 1989 loan from Stew Leonard Sr. to the defendant
K. $5,000 to the plaintiff
L. $5,000 towards paydown of the principal now owing on the 1989 loan from Stew Leonard Sr. to the defendant
M. $5,000 to the plaintiff
N. $5,000 towards paydown of the principal now owing on the 1989 loan from Stew Leonard Sr. to the defendant
O. $5,000 to the plaintiff
P. $5,000 towards paydown of the principal now owing on the 1989 loan from Stew Leonard Sr. to the defendant CT Page 3427
Q. $5,000 to the plaintiff
R. Equal division between the parties of any remaining net proceeds
16. The defendant shall retain all of his 401(k) savings plan asset together with sole liability for the repayment of the loan against that asset. Any rights or claims of the plaintiff whether as survivor or beneficiary or otherwise, are hereby extinguished.
17. The plaintiff is awarded sixty percent of the defendant's 401(k) retirement plan for which the defendant is eligible as of March 11, 2003, or as of the closest date thereafter, but not before that date, on which a calculation can be made by the plan administrator. The remaining forty percent plus any contributions made by the defendant or his employer to that plan after March 11 shall be the defendant's alone. Any rights or claims the plaintiff might have had to that remaining forty percent are hereby extinguished. The defendant shall provide to the plaintiff the name, address and telephone of the plan administrator, together with the correct name of the plan, on or before April 2, 2003. The plaintiff shall be responsible for the preparation and filing and expense of the Qualified Domestic Relations Order. This court shall retain jurisdiction for review of the Qualified Domestic Relations Order.
18. The defendant is awarded the security deposit in the amount of $895 that he has paid to his current landlord.
19. Whether the parties file jointly or separately on their income taxes for the year 2002, they shall pool the amounts to be refunded to each and to be paid by each on federal and state tax returns and shall divide equally the net amount to be refunded. If the parties do not file jointly, then they shall split equally the deductions available for mortgage interest and real estate tax payments.
20. The defendant is solely responsible for payment of the remaining car loan on the 1997 Chrysler Town Country automobile if the full amount is not paid off from the proceeds of the house sale. He shall be solely responsible for costs associated with keeping that car registered and insured and shall save the plaintiff harmless from all expenses associated with that automobile. The plaintiff shall sign over to the defendant sole title to the Chrysler as soon as that title becomes available from the current lender. The plaintiff is awarded sole ownership of all other motor vehicles now owned or possessed by the parties or either of them. CT Page 3428
21. The defendant shall retain sole ownership of Absolutely Necessary, LLC and all assets or debts associated with that corporation. He shall forthwith cause the plaintiff's name to be removed as an officer and/or director of that corporation.
22. Each party shall retain bank accounts now in his or her own name.
23 Each party shall retain sole ownership of all furnishings and equipment now in the possession of each and/or now located at their respective residences.
24. To the extent that debts listed on each party's financial affidavit at the time of the trial on the dissolution of their marriage are not discharged when the house is sold, each party shall be responsible for the debts listed on his or her own financial affidavit and shall indemnify and save the other party harmless therefrom. Each party is responsible for his or her own attorneys fees associated with this action.
25. Beginning with the tax year 2002, the plaintiff shall be entitled to claim the child Cassidy Leigh Snider as a dependant for income tax purposes. The defendant shall be entitled to claim the children Rochelle Royce Snider and Belinda Shea Snider as dependants for income tax purposes.
Winslow, J. CT Page 3429